FILED _____ _____ ENTERED
_____ LOGGED _____ RECEIVED

JUL 2 5 2011

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| **CAPITAL ONE**<br>1680 Capital One Dr.<br>McLean, Virginia<br><br>PLAINTIFF<br><br>v.<br><br>**NANCY M. JACOBS**<br>12903 Summit Ridge Terrace<br>Germantown, Maryland 20874<br><br>DEFENDANT. | CASE NO.: **AW 11 CV 2046**<br><br>JUDGE: _____<br><br>**NOTICE OF REMOVAL:<br>DISTRICT COURT OF<br>MARYLAND FOR<br>MONTGOMERY COUNTY<br>CASE NO.: 2367-2011**<br><br>**JURY TRIAL DEMANDED** |

## NOTICE OF REMOVAL

COMES NOW the Defendant Nancy  Jacobs who hereby petitions this Court for this Notice of Removal pursuant to Title 28 U.S.C.A.  1441 (Actions removable generally), Title 28 U.S.C.A. § 1446(b) (Procedure for removal), and  Local Rule 102, Section 5. (Removal). The removable action is filed pursuant to a Summons served on June 26, 2011 to said Defendant Nancy M. Jacobs. Said action  was filed by Plaintiff Capital One, N.A. on December 10, 2010, and the Defendant answered the complaint on July 8, 2011, in the District Court of Maryland for Montgomery County, Silver Springs, with the Intent to Defend and a demand for a Jury Trial pursuant to Maryland Rule 3-325.

In that Intent to Defend response the Defendant stated that she was also going to file for this Notice of Removal to this United States District Court for the Southern District of Maryland within  thirty days of receipt of the Summons as so stipulated by Title 28 U.S.C.A. § 1441 (Actions removable generally) and Title 28 U.S.C.A. § 1446 (Procedure for removal). In the Summons was the notification of the  Hearing in the District Court of Maryland for Montgomery

County, Silver Springs, for September 9, 2011, at 1:30 P.M. However, because of the demand for a Jury Trial the Clerk of the Court sent the Defendant a letter stating that the date was cancelled and the case was transferred to the Circuit Court for Montgomery County, Maryland in Rockville for Jury Trial.

*Defendant states that she has Article III and statutory standing to contest this cause of action and have it removed to this Honorable Court, and pursuant to the violations of the Federal statutes the case should have originally been filed in the U.S. District Court by this Defendant.[1] The State statutes are secondary to this Federal cause of action.*

The Defendant states the following reasons for this Notice of Removal, to-wit:

A. **That the Defendant avers that every person who reads this pleading has an interest in its merits and cause of action, or alleged merits and cause of action, because the causes stated in this action not only involve the Consumer Protection Act which Defendant alleges is being abused by credit card institutions, debt collectors, and other related financial firms or persons, but by the misuse of taxpayer dollars which were used to bailout Plaintiff Capital One Bank, N.A.**

B. **Defendant further alleges that if the reader has not been a victim of these groups, there is a great probability that he or she has a relative or close friend who is being victimized, and Defendant avers that every taxpayer is also being victimized by a corporation which has misappropriated bailout funds which were given to Capital One Bank, N.A. to aid the debt plagued consumer with low interest loans and which were given in good faith by the American people.**

---

[1] Pleading, amended pleading, motion, order or other paper is sufficient to start running of 30-day period within which defendant must file petition for removal if the defendant can, from the pleading, etc., ascertain the case is one which is or has become removable. *International Equity Corp. v. Pepper & Tanner, Inc.*, D.C.Pa.1971, 323 F.Supp. 1107.

C. That the Defendant further alleges that some of the government agencies which were devised to regulate and oversee these credit card agencies, banks, and other financial institutions have closed their eyes to the debt collection proceedings in these financial institutions and kept "secret" their consumer protection efforts instead of being transparent. Defendant states that these actions affect every Citizen of the United States either directly or indirectly since the bailouts began in 2008.

## I. PARTIES

1.    The upon information and belief the name and address of the  Plaintiff is as follows:

a.  The name of the Plaintiff as listed on the complaint is: Capital One Bank, (Usa), N.A., 1680 Capital One Dr., McLean, VA 22102.

2. That the name and address of the Defendant individuals is as follows:

a. NANCY JACOBS. Her address is 12903 Summit Ridge Terrace, Germantown, Maryland, 20874.

Except where the context is otherwise indicated, reference to "Defendant" refers to the named Defendant.

## II.  JURISDICTION  AND  VENUE

3.    That the jurisdiction for this cause lies with: Title 28 U.S.C.A.  1441 (Actions removable generally), Title 28 U.S.C.A. § 1446(b) (Procedure for removal), and  Local Rule 102, Section 5. (Removal).  Also, Title 28 U.S.C.A. § 1331 (Federal Question) and Title 28 U.S.C.A.  §1332 (Diversity of  citizenship; amount in controversy; costs) and the following issues arising under the Constitution of the United States:

a.      Article I, § 8, cl. 3 of the Constitution of the United States which is commonly referred to as the Commerce Clause and which gives Congress the power *"[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."*

b.      Article IV, Section 1: *"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other States. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."*

c. Amendment V: *" ..., nor be deprived of life, liberty, or property, without due process of law; ... "*

d. Amendment VII: *"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, . . ."*

e. Amendment XIV of the Constitution of the United States: *" . . .nor deny to any person within its jurisdiction the equal protection of the laws."*

f. Title 15 U.S.C.A. § 1692, et seq. FAIR DEBT COLLECTION PRACTICES ACT;

The RICO statutes were enacted by Congress pursuant to Article I of the Constitution and are the statute jurisdiction upon which this Complaint also chiefly relies as follows:

g. Title 18 U.S.C.A. § 1961 (Definitions) and (1)(E): *"any act which is indictable under the Currency and Foreign Transactions Reporting Act,"*;  and, 1961(6) "unlawful debt";

h. Title 18 U.S.C.A. § 1964 (c) (Civil remedies);

i. Title 18 U.S.C.A. §1966 (Expedition of actions); also,

j. Title 18  U.S.C.A. § 657 (Lending, credit and insurance institutions),

k. Title 18  U.S.C.A. § 875  (Interstate communications),

k. Title 18  U.S.C.A. § 875  (Interstate communications),

l. Title 18  U.S.C.A. § 1028 (a)(7)(Fraud and related activity in connection with

identification documents, authentication features, and information),

m. Title 18  U.S.C.A. § 1341 (Frauds and swindles) and

n. Title 18  U.S.C.A. § 1343 (Fraud by wire, radio, or television).

o. Title 18  U.S.C.A. § 1346 (Definition of "scheme or artifice to defraud"),

p. Title 18  U.S.C.A. § 1951 (Interference with  commerce by threats or violence).

q. Title 18  U.S.C.A. § 1956 (Laundering of monetary instruments),

r. Title 18  U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from

specified unlawful activity),

t.  CONSUMER PROTECTION ACT: Title 15  U.S.C.A.  § 1601, et seq., 12 CFR

226.18;

u.  RESTATEMENT (SECOND) OF  RESTITUTION, QUASI CONTRACTS, AND

CONSTRUCTIVE TRUSTS, § 202(c).

4.   That venue for this Complaint is based pursuant to Title 28 U.S.C.A. § 1391(b)

(Venue generally), and the clause in that statute which states: *"except as otherwise as provided*

*by law."*

5.   That Defendants aver that  this Complaint in no respect should eliminate or limit the

Defendant's  participation on claims which may evolve pursuant to Title 18 U.S.C.A. § 1963 (f)

when deemed  applicable and feasible  by the Attorney General of the United States.

6.  That any hereinafter described real estate, property, or like assets occupied by the said Capital One Bank, N.A., et al, may be charged with the payment of the Defendant's claims thereof pursuant to Title 18 U.S.C.A. § 1964 (a)[2] and (c); and that the same be declared a lien thereon for the payment of which said property may be sold

### III.  STATEMENT OF FACTS

7.  That the name of the Plaintiff varies in this lawsuit,  there is a lack of documentation to support the complaint, and the supposed contract which was attached to the complaint is so illegible that it cannot be read. This exhibit does not meet the Maryland Rules requirement that the *"A paper and the writing on it shall be of permanent quality and the writing shall be legible."*[3] The paper fails to meet the Federal Rules of Civil Procedure: Rule 8 (General Rules of Pleading)  which requires that the font size be at least 11points. Defendant states that this document needs to meet the standards of the court pursuant to Title 15 U.S.C.A. § 1681s-2(B).

8.  That the Defendant also avers that there appears to be no signature on this document as it was submitted. Defendant Nancy M. Jacobs wants a copy of the Original agreement with her signature on it, not a copy. Defendant challenges this document which is illegible and unidentifiable.  The document must be an original. Defendant states that due to the condition of this exhibit the Plaintiff should be ordered to identify this Defendant as the person so named in that document and a contract should be presented by the Plaintiff Capital One Bank, N.A.

---

[2] § 1964(a): The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; *or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.*  (Emphasis added).
[3] MARYLAND RULES: 1-301. FORM OF COURT PAPERS (d) Legibility and Durability.

9. That the Plaintiff submitted a one page list of charges as an exhibit. Once again, who is this Defendant? Where is complete documentation of all the charges? Defendant states that the Plaintiffs should be ordered to comply with an order demanding not only the complete documentation to support the funds demanded in the complaint, but also a complete explanation of all late charges, interest charges, and other fees or "add ons" associated with this account which prove how this amount was determined IF the debt is really hers.

10. That if the Plaintiff wants the Defendant to pay this debt, then it must prove:

a) That Defendant Nancy M. Jacobs owes this debt;

b) That Defendant owes this debt to National Attorneys Network as stated in the letter from Peroutka & Peroutka, P.A.    (Peroutka & Peroutka, P.A. appears to have two clients claiming the same debt.).

That the Defendant avers that according to the Federal statutes the following procedures must be met: within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:

a.  the amount of the debt;

b.  the name of the creditor to whom the debt is owed;

c.  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

d.  a statement that if the consumer notifies the debt collector in writing within the thirty-

e. a <u>statement that, upon the consumer's written request within the thirty-day period, the</u> <u>debt collector will provide the consumer with the name and address of the original</u> <u>creditor, if different from the current creditor.</u>

That the only documents that the Defendant has received from this law firm are:

a) a letter dated June 22, 2011;

b) a Summons on June 26, 2011 stating the case was filed on December 10, 2010; and,

c) a notification letter on July 11, 2011 stating that the Summons had been served.

11.   That if it please the court, Defendant is requesting that the Honorable Court be willing to uphold a time-honored principle of contract law–that ambiguities are construed so as to favor the party that didn't write the document.

12.   <u>That on October 8, 2008  the Defendant filed for Chapter 7 bankruptcy. There was a</u> <u>scheduled hearing for creditors on November 8, 2008, and Capital One Bank, N.A. did not</u> <u>appear. Capital One Bank, N.A.  did not appear then to claim any debt and yet now  appears out</u> <u>of nowhere without the prerequisite six months of   statements to validate the debt. Where was</u> <u>Capital One Bank, N.A. at that creditors meeting?</u>

13.   That Defendant avers that Capital One Bank, N.A. converted itself to a national bank when it was sued by West Virginia Attorney General Darrell McGraw to avoid prosecution in the first court case he filed.

14.   That a creditor automatically charges off a debt when it's 180 days in arrears. It does so because that's the law; the Federal Financial Institutions Examination Council requires it. This is because a bank that didn't charge off old debt would keep it on the books, misleading investors about the true value of its assets. However, this doesn't mean that one of COFC's subsidiaries, such as Capital One Creditor or Capital One Collections won't try to collect.

is because a bank that didn't charge off old debt would keep it on the books, misleading investors about the true value of its assets. However, this doesn't mean that one of COFC's subsidiaries, such as Capital One Creditor or Capital One Collections won't try to collect.

15.   That when Capital One Bank, N.A.  collected money from the bailout and included these debts as liabilities, and then sold these debts instead of renegotiating lower interest rates, it crossed the line. Capital One Bank, N.A. raised the interest rates from 8.5 to 17.9 even for those consumers in good standing after receiving the bailout money.

16.   That when Defendant Jacobs began to research this matter, the overwhelming facts which support her allegations were revealed through the filings of multiple Attorneys General of several States.[4]   Therefore, this is not the ramblings of a debtor who is trying to escape the allegations of the complaint filed in the lower court *IF* they are true and can be proved.

17.   That Defendant avers that Capital One has every right to do business – within the law – as they see fit. However once they took taxpayer money that changed and accountability must be demanded by our elected officials and the government agencies that regulate Capital One Bank, N.A. and other banks.

## IV.   DEBT BUYER  OF BAILOUT FUNDS

18.   That the Defendant alleges that this complaint is a "debt buyer" filing made by a debt collector law firm named Peroutka & Peroutka, P.A. It is unclear from the Plaintiff's filing, exhibits, and letters whether the attorney is representing a debt buyer, the original creditor, or the creditor as a debt buyer.[5]

---

[4] Minnesota, West Virginia, New Jersey are some of the States which have filed against Capital One Bank, N.A. for consumer protection acts violations.
[5] Only discovery will affirm this allegation and Defendant will stringently pursue this subject.

its "client": "National Attorneys Network."[6] When Defendant Jacobs received the letter she had never heard of this "client" and had disregarded the letter as a mistake since she has a rather common name. The letter was never followed up with any other letters or explanatory documents. The Summons was then served on June 26, 2011.

20. That the data in this complaint does not meet any acceptable standard of proof since:

a) The name of the client is not the same as the letter dated June 22, 2011;

b) The documentation for the debt is not complete;

c) The attached contract is illegible and unreadable;

d) The blurred contract, even though it is reproduced in a approximately 3 pt type, does not appear to have a signature; and

e) The Affidavit about the military indicates the Plaintiff may have the entirely wrong person.[7]

---

[6] The letter from law firm named Peroutka & Peroutka, P.A. was attached to the Defendant's response which was filed in the District Court for Montgomery County, Silver Springs on July 8, 2011.

[7] **THE FAIR DEBT COLLECTION PRACTICES ACT**
**§ 809.  Validation of debts   [15 USC 1692g.**
(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --
   (1) the amount of the debt;
   (2) the name of the creditor to whom the debt is owed;
   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection

21.    That the FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. §1692e, and provides a non-exhaustive list of conduct that violates the FDCPA, including "[t]he threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). False names is definitely an illegal action. These questions are issues of first impression and are in a case of the Fourth Circuit.[8]

22.    That Defendant alleges that Capital One sold this debt for pennies on a dollar to an organization named "National Attorneys Network." The complaint was filed under the name of "Capital One, N.A.," Defendant alleges that this is a fraud upon the court as it was filed.

23.    That pursuant to Title 15 U.S.C.A. § 1692, Defendant can and now does demand that all of the records relating to this account be submitted to the Defendant showing how this debt was derived and proving if the Defendant is liable for this debt.    The  name of the Plaintiff varies from the correspondence, therefore, the  same can hold true for the name or identity of the Defendant in the same case.

---

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.
(c) The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.
[8] *WAYNE A. BRADSHAW, ET, V. HILCO RECEIVABLES, LLC,*Case Action No.: RDB-10-113. The creditor argued that it was not liable for violating the FDCPA because it did not threaten to take illegal action against the debtor but, rather, merely filed an illegal lawsuit against him. Although noting a split of authority among the circuits, the Court adopted the majority view, holding that the relevant section of the FDCPA prohibits the taking of "action that cannot legally be taken," as well as the threatening of such action. Furthermore, under the "least sophisticated debtor" standard prevailing in the Fourth Circuit, the Court held that the filing of an illegal collection lawsuit would reasonably be construed by such a debtor as a threat to take illegal action.(From Memorandum Opinion).

24.   That Defendants further states that the Court enter into this equation the fact that Capital One, N.A. received $3.56 billion dollars in bailout money from the U.S. Government in 2008 after the September 2008 economic collapse I order to stimulate the initiation of new loans and economic relief such as the one that Plaintiff is attempting to present.

> "So far, the one Richmond-based financial firm that's getting help from the federal bailout is the one that says it doesn't need it.
>
> The bailout money — in the case of Capital One Financial Corp., $3.56 billion of taxpayer funds — is meant to encourage financial firms to lend more money.
>
> But Capital One, with its main operations in Goochland County, expects to reduce car loans 45 percent this year. And barely two weeks after getting the bailout funds, it moved to snap up a healthy Maryland-based savings bank that would make Capital One the largest bank in the Washington area."[9]

25.   That the bank that the news article is referring to is Chevy Chase Bank. Capital One representative states that the bailout money was not used to purchase that banking group. Said representative states that Chevy Chase Bank was acquired from stock.

26.   That Capital one supposedly repaid this bailout on January, 2009. In early February, 2009, Capital One was accused of fraud in the use of the bailout funds.

27.   That approximately five months ago one of the financial newspapers announced that Capital One had received a "continued" injection of funds for another bailout in the amount of $26 billion. In June, 2011, it was announced that Capital One is now acquiring ING's online banking group.

28.   That, in short, the Defendant, as well as every other taxpayer, bailed out Capital One with her own tax money in that 2008 bailout and these continued bailouts. Capital One collected twice: once for the charge off of the debt on Capital One Bank, N.A.'s tax schedule, and through the Defendant's own tax dollars which were given to Capital One to "adjust" this debt.

---

[9] RICHMOND TIMES-DISPATCH, by David Ress and Michael Martz Times Dispatch Staff Writers, December 7, 2008.

29.  That the Defendant alleges that this complaint is probably one of these "debt buyer" filings made by the law firm named Peroutka & Peroutka, P.A. How many of these debt buyer complaints does this law firm file in a year? In a month?

30.   That in a little-noticed move, Capital One is increasing minimum payments for customers who are behind with credit-card payments, while decreasing minimum payments from customers who are current. The company said the change came because it has new regulators, after consolidating some of its subsidiaries.

> In a little-noticed move, Capital One is increasing minimum payments for customers who are behind with credit-card payments, while decreasing minimum payments from customers who are current. The company said the change came because it has new regulators, after consolidating some of its subsidiaries.
> The change will mean more people falling behind on payments. Capital One said it will increase the percentage of card balances it designates as uncollectable by 0.5 percentage points next year -- that's roughly equal to $60 million of credit-card balances on its own books and $250 million of balances on credit cards it manages for other investors.[10]

31.  That the Minnesota Attorney General stated in his lawsuit against Capital One that one of the ploys that Capital One is using against consumers whose debts are charged off is to inundate the consumer  with new credit card applications in order to transfer the old debt onto a new credit card. By doing this Capital One is able to charge interest, late fees, and over-the-limit fees on debt that otherwise would not have been subject to those fees stated Attorney General Darrell McGraw. Defendant Jacobs name is Capital One Bank, N.A.'s list which barrages her with credit card applications.  Even  an Attorney General's lawsuit and subsequent win in court does not deter this organization from continuing the same fraudulent practices.

32.  That the Defendant avers that this is where the government agencies which are the overseers of financial institutions which issue credit have failed in their duties to protect the

---

[10] Id. Richmond Times-Dispatch, December 7, 2008.

consumer from the banks and credit card companies which continue to conduct these fraudulent practices even after they are sued by State governments. Fines issued by the courts for these fraudulent acts are just a cost of doing business as one credit card company stated in 1999.

33.   That now Capital One has sold this debt to these debt collectors and collects yet a third time for this same debt. Debts such as the one cited in this Plaintiff's pleading are a bonanza when they keep yielding and yielding and yielding.

34.   That the Defendant will be consulting with legal counsel to consider filing for actual damages, including damages for emotional distress or mental anguish which exceed $100,000.

35.   That, thus, and eventually, almost every crime in the book is perpetrated in the name of corporate greed since, as white collar crime expert Karl Schuessler states: *"criminals perfect an organization and with organization their crimes increase in frequency and seriousness."* [11] It is the frequency and number of white collar crimes which might qualify this as a case under the Racketeering Influenced and Corrupt Organization Act (RICO).

36.   That, therefore, the Defendants state that the action filed in the State Court was not a single incident under State laws, but one of multiple violations of the Consumer Protection Act, which are of interest to the Securities Exchange Commission Criminal Investigation Division, and the Internal Revenue Criminal Investigation Division. Thus, the Defendants implore the Attorney General of The State of Maryland launch a full   investigation as to how this conglomerate maintains the power to violate any Federal statute at its will, and, this case qualifies for that investigation since it is definitely of general public interest because these acts affect so many individuals and institutions both domestically and internationally.

---

[11] Karl Schuessler, *Edwin H. Sutherland: On Analyzing Crime*. Chicago: University of Chicago Press, 1973, Part I, p. 21.

37.  That the Defendant avers generally that all conditions precedent have been performed or have occurred specifically and with particularity as described in this petition for removal by the Defendant Nancy Jacobs:

## V.  CAUSE OF ACTION

38.   That the  Defendant in the District Court of Maryland for Montgomery County, Case No. 2367-2011  state the following, to-wit:

39.  That this action for a Notice of Removal  arises from fraudulent actions  committed by the Plaintiffs through the following frauds which are applicable but not limited to: theft by conversion, mail fraud, wire fraud, financial and lending institutions fraud,  money laundering, fictitious identity used in a felony, and breach of contract.

40.  That representatives from "credit card services" called  the Defendant on July 7, 2011 at 11:36AM from Florida, telephone number 407-480-9999, and, even after the case is filed, still offers to "consolidate" the outstanding credit card debt. The Defendant avers that this criminal procedure is part of the same scam for which other attorneys general have sued this Plaintiff.

41.  That the Defendant will rely upon the actions taken by several state attorneys general including Minnesota, New Jersey, and West Virginia. West Virginia  Attorney General Darrell McGraw has been investigating complaints filed by his constituency against Capital One since 2004. Attorney General McGraw sued Capital One and a debt collection agency for *"unconscionable conduct in connection with their credit card lending and collection practices"* on January 22, 2010, stating that they had used deceptive practices in both lending and collection practices.

42.  That said Attorney General for the State of West Virginia   sued the Plaintiff Capital One for Debt Collection violations and re-aging of charged off debts. The telephone call that the

Defendant received is identical to the actions which were alleged in that lawsuit where victims are contacted and asked if they would like to consolidate their credit card debts and have their interest rates lowered.

43.  That in that lawsuit the Plaintiff was alleged to offer these "interest lowering" new credit cards through this consolidation in order to entrap the victim into submitting a charged-off account to this new account in order to scam the victim one more time.

44.  That these combined acts were a deceptive scheme to deny honest services to the credit card holders and swindle literally hundreds and thousands of individuals so similarly situated out of their funds by simultaneously writing off the debt and collecting the debt through a "re-aging" process. .

45.  That the Defendant further alleges that when the Capital One in house collection agencies were not successful at collecting the original debt or the charged-off debt, then they encumber financial institutions and other businesses by devaluing these assets which their companies had bought as investments.

Uniform Fraudulent Conveyance Act (UFTA) § 9(2) states: "A purchaser who without actual fraudulent intent has been given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment."

## VI. FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS

### A.  GENERAL  PUBLIC  INTEREST

46.  That this case is not a simple Notice of Removal case from a State to a United States District Court since it is a complex litigation against one of the country's largest corporations. Defendant avers that   Plaintiff Capital One Bank, N.A. has committed fraudulent acts through well organized and large illegal RICO enterprises within  legal entities, and this case affects the

Defendant directly and indirectly, but the decision in this case will affect hundreds of thousands of other debt victims so similarly situated.

> "The exercise of judicial power... depends on the existence of a case or controversy ...[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. Its judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character ... [A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." [12]

## B.  DEFENSES

47.   That the Plaintiff failed to state a cause of action upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. There is no complete and proper documentation  showing that any real evidence was presented, and that the Defendant Jacobs was notified of the Plaintiff's (Capital One Bank, N.A.? National Attorney Network?) intention to file the complaint before it was filed.

## C. AFFIRMATIVE DEFENSES

48.   That the Plaintiff Capital One Bank, N.A.'s claims are barred by fraud, as the Complaint is replete with false  or void representations  of material fact, made with the knowledge of falsity, because the Plaintiff  has not presented proof that the Defendant is the proper and rightful person in this documentation.

49. That the Plaintiff's  claims are barred by duress.

50. That the Plaintiff's claims are barred by estoppel.

51. That the Plaintiff's claims are barred by illegality.

52. That the Plaintiff's claims are barred by their failure to satisfy conditions precedent.

---

[12] *Preiser v. Newkirk*, 411 U.S. 395, 401 (1975) (all but Justice Douglas joined this opinion)(citations and internal quotation marks omitted).

53. That the Supreme Court has held that to establish standing under the Constitution of the United States and key statutes a party must prove: (1) an "injury in fact" which is both "Concrete and particularized" and "actual or imminent"; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. The injury must "affect the plaintiff in a personal and individual way."[13] The "injury in fact" component requires that the party "allege a distinct and palpable injury to himself."[14]

54. That where is the interest or other investment returns on this bailout money which was given to this Plaintiff Capital One Bank, N.A. even after a spokesperson stated that the funds were not needed since the company was so solvent that it could afford to buy Chevy Chase Bank just two weeks after the bailout money was issued? Why did the latest acquisition of ING online banking just happen? Is the public aware taht these bailouts are not just a one time shot but may be issued over and over again? Was there another bailout given to Capital One Bank, N.A. just this year to coincide with this new purchase?

55. That Defendant asks if taxpayer bailout dollars are funding private corporations without any return on the investment? Why can't the Defendant receive bailout money to purchase a new house and not pay any interest on the mortgage loan? Does it work like this: get the bailout money, buy the property, pay no interest on the "loan," repay the loan in full only to borrow the money at a not so later date if things don't work out due to the *"bad economic conditions"?* [15] The Restatement of Restitution treats fraudulent transfers as a specie of wrongful transfer justifying restitution by constructive trust or equitable lien:

---

[13] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed. 351 (1992).
[14] *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed. 2d 343 (1975).
[15]

(2) Where the owner of property transfers it in fraud of third persons, the transferee holds the property subject to their claims, unless he is a bona fide purchaser. [16]

Restitution ordinarily compels return of the specific trust property since this remedy is designed to return both the wrongdoer and the victim to the status quo ante. When restitution in species is impossible, restitution requires the wrongdoer to return its proceeds as a substitute. When money must be substituted, the amount is measured by the greater of the victim's loss (returning the victim to status quo ante) or the wrongdoer's gain (returning the wrongdoer to status quo ante by depriving him of all proceeds of his wrongdoing), at the victim's choice. Sometimes the loss is not the amount misappropriated, but what profits the victim would have made. DIRECT QUOTE from <u>Federal Money Laundering; Crimes and Forfeiture</u>, by B. Frederic Williams, Jr. and Frank D. Whitney (1999), unless otherwise noted.

56.  That the Defendant alleges that Capital One Bank, N.A. is in defiance of the four major elements of proof for a domestic, and international, money laundering violation pursuant to Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments) :

a) The Plaintiff conducted, attempted to conduct, or aided and abetted someone who conducted a "financial transaction";

b) The property involved in the transaction is "in fact" the proceeds of one or more "specified unlawful activities" since they were the object of the theft by conversion through fraud;

c) Plaintiff knows that the transaction of debt collection is used as collateral to raise money through the proceeds of "some form of unlawful activity" after the transaction was completed; and,

d) That somewhere in all of these shenanigans the Internal Revenue Service was defrauded of future income when the money from the bailouts was used for the purchase of the

---

[16] Section 168 "Wrong by transferor to Third Person." Creditors, as opposed to the victims in the other subsection, have no interest I specific property. Subsection 168(1) provides: "where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser."

two financial institutions (Chevy Chase Bank and ING online bank) instead of loans to consumers, and, thus, future taxable incomes in violation of Title 26 U.S.C.A. § 7201 (Attempt to evade or defeat tax). Was the bailout money taxable?

57.  That the Capital One Bank officers, executives, and board of directors authorized the bailout money for the purchase of the two financial institutions, or used the bailout money as collateral, and then upon completion of the procurement of at least one of the new bank acquisitions (Chevy Chase Bank), returned the bailout money. Said officers, executives, and board of directors had to know or must have known, that the devious and deceptive plan was a fraud upon all of the taxpayers of the United States.

> *It is necessary to show that an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity. Once knowledge or reckless indifference at this high level has been determined, the court may then consider other factors, among them the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefited from the racketeering activity.*[17]

58.  That Defendant avers that it does appear from the news releases that Plaintiff Capital One Bank used the bailout money, interest free, for the purchase of at least one of these banks. That instead of repaying the bailout money with interest, the money was returned penny for penny. Who made this bailout payback arrangement anyway? This payment at full value should have been factored into the profit statements for Capital One Bank. Either way, there was no valid or legal justification for not paying the American taxpayers their rightful due.

---

[17] *Gruber v. Prudential-Bache Secs., Inc.*, 679 F.Supp. 165, 181 (D.Conn. 1987).

59.  That all persons, including employers, employees, agents, brokers, nominees, co-conspirators or third parties, who knowingly participate in the fraudulent transactions of conducting the bailout scam are included under §1956 (a).[18]

60.  That, therefore, the intracorporate conspiracies are operative in context to the criminal statute violations. This precedent was held in *United States v. Wise*, 370 U.S. 405, 417, 82 S.Ct. 1354, 1362, 8 L.Ed.2d 590 (1962) (Harlan, J. concurring) *("the fiction of corporate entity, operative to protect officers from contract liability, had never been applied as a shield against criminal prosecutions.. . ."),* as quoted in *Mauiber v. Shearson/American Exp., Inc.,* 567 F.Supp. 1231, 1241.

61.  That  the word "promote" means to contribute to growth, enlargement, or prosperity of; to forward; to further;  to encourage; to advance. Thus, when the §1956(a)(1)(A)(i) states: *"with the intent to promote the carrying on of specified unlawful activity; ...."* The intention is to continue the criminal activities under an aura of legitimacy.

62.  That the Defendant states that all the allegations of the Plaintiff's Complaint not specifically admitted to herein are denied. Defendant  avers the following affirmative defenses to the allegations raised in Plaintiff  Complaint:

(a) Plaintiff's Complaint fails to state a claim upon which relief can be granted.

(b) At all times relevant, Defendant  exercised reasonable care and diligence.

---

[18] In its seminal decision in *United States v. Elliot,* 571 F.2d 880, 903 (5th Cir.), cert. denied, 439 U.S. 953 (1978), the Fifth Circuit stated that "[t]he substantial  proscriptions of the  RICO statute apply to insiders *and outsiders-* those merely 'associated with' an enterprise- who participate directly *and indirectly* in the enterprise's affairs. Thus the RICO net is woven tightly to catch even the smallest fish, those peripherally involved with the enterprise" (emphasis added-citations omitted). *Shearin v. EF Huton Group, Inc.,* 885 F.2d 1162, 1166 (3rd Cir 1989).

(c) Plaintiff was negligent and careless and directly and proximately contributed to the occurrence of their damages, if any, which said negligence either bars completely or partially the damages sought in the Complaint.

## VII.   RULE 26   CORPORATE DUTY OF DISCLOSURE BY PLAINTIFF

63. **That the Defendant demands that Plaintiff Capital One Bank, N.A. comply immediately with a Rule 26 (a)(1)(General Provisions Governing Discovery; Duty of Disclosure) initial disclosure since this case is already existing and the Plaintiffs are late.**

64.   **That in the Rule 26 (General Provisions Governing Discovery; Duty of Disclosure) disclosure Defendant avers that:**

a) She has the right to enlist the aid of those so similarly situated through discovery, and to achieve this goal it is mandatory that the records of Plaintiff Capital One Bank, N.A./National Attorney Network and must divulge the names and addresses of other debtors so similarly situated in the State of Maryland whose debts were sold to debt buyers;

b) the Plaintiff Capital One Bank, N.A./National Attorney Network (have) the obligation to divulge all of their so named subsidiaries, corporate entities, or any of its directly and indirectly owned organizations and enterprises including all of its foreign corporations listed in its Corporation Documents, and an entities, corporations, companies, affiliations, subsidiaries, associates-in-fact, and, accounts, organizations, corporations, subsidiaries, companies and affiliations held in trust by one or any of these aforementioned entities or the officers of this corporation;

c) the Plaintiff Capital One Bank, N.A./National Attorney Network (are) to reveal the names and addresses of all officers, board of directors, and executives who were instrumental in

making the decision to sell the charged off debts after the procurement of Chevy Chase Bank; and,

   d) the Plaintiff Capital One Bank, N.A./National Attorney Network (are) to submit the entire list of all property holdings of the aforesaid paragraphs 1-3, both domestically and internationally.

## VIII.  VIOLATIONS OF FEDERAL TRADE COMMISSION LAWS

65.  That Defendant incorporate and reallege paragraphs 1 through 65 as if fully set forth herein.

66.  That Defendant allege that the advertising for the unfair or deceptive acts or practices in commerce for applying and obtaining credit cards induces victims with false claims in violation of Title 15 foll. U.S.C. § 52, and Title 15 foll. U.S.C. § 1700, 12 CFR § 226.24.

67.  That   employees of the Plaintiff's enterprises made extensive use of the United States mails in repeated violation of Title 18 U.S.C. § 1341 (mail fraud) to execute, effectuate, facilitate, and further the aforesaid false advertising with funding from and for these fraudulent acts.

68.  That the Defendant avers that these credit cards are issued to persons according to their incomes. Then Capital One Bank, N.A. raises the limit slowly knowing that  the minimum monthly amount required just cannot be met when the consumer is living paycheck to paycheck due to the economic increases in basic necessities, a medical emergency, or a loss of employment.  When this occurred during this ongoing crisis Capital One Bank, N.A. , instead of helping the consumer by lowering the monthly payment, or just keeping the interest rate the same, chose to punish these consumers by raising the interest rates not only on them but on the consumers who never have any problems paying their bills.

69.   That Plaintiff Capital One Bank, N.A. depends on those late charges, interest charges and other fees for its every day income.

70.   That the Defendant contends that if the credit limit had not been raised and the interest rate not been increased, these defaults would not be so copious.

71.   That Defendant alleges that Plaintiff Capital One Bank, N.A. issues credit cards to persons whom they also know will knowingly, premeditatedly, and fraudulently   default upon after a certain period in order to collect the various late fees, added interest, etc., and this is an unfair and   deceptive practice in commerce in violation of the rules and regulations of the Federal Trade Commission (FTC), Title 15 foll. U.S.C. § 45.

72.   **That the multiple acts of racketeering activity by Plaintiff Capital One Bank, N.A., their subsidiary enterprises, and the individual officers, directors, etc., are interrelated and are part of this continuous pattern of intentionally fraudulent advertising schemes to deceive the *intended* and *actual* consumer victims, including the Defendant, and are perpetrated for the same or similar purposes, thus constituting a "pattern of racketeering activity," as defined by Title 18 U.S.C. § 1961 (5), and in violation of Title 18 U.S.C. § 1962 (a) by the officers and executives, in violation of Title 18 U.S.C. § 1962 (c) by the employees.**

THEREFORE, Defendant pray that:

A. the Plaintiff Capital One Bank, N.A., its defendant subsidiary enterprises, and individual defendants, known and unknown, should for the sake of public policy and to prevent further violations of the law, have ORDERS issued "*imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any*

*person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce*;" pursuant to Title 15 foll. U.S.C. § 1964 (a); and ,

B. such other and further relief as the Court deems proper.

## IX.   DEPRIVATION OF HONEST SERVICES

73.  That Defendant incorporate and reallege paragraphs 1 through 72 as if fully set forth herein.

74.   That Defendant allegea that this scheme or artifice consisted of affirmative misrepresentation or of concealment of terms and conditions of contract in violation of Title 18 U.S.C. § 1346.

75.   That Defendant was deprived of the intangible right of honest services through the artifice to defraud by the Capital One Bank, N.A. enterprises and the persons who are  officers and executives, who have engaged in the  activities which affect interstate or foreign commerce through a pattern of racketeering activities and the collection of the unlawful debt, have acquired or maintained, directly or indirectly, any interest or control of these enterprises which has resulted in a violation of Title 18 U.S.C. § 1962 (b).

76.   That Defendant was deprived the intangible right of honest services through the artifice to defraud by the Plaintiff's employees or associations in fact, who have engaged in the activities which affect interstate or foreign commerce, through a pattern of racketeering activities and the collection of the unlawful debt, and who have conducted or participated, directly or indirectly, in such enterprise's affairs which has resulted in a violation of Title 18 U.S.C. § 1962 (c).

77. That Defendant alleges that the deprivation of these honest services by the conspiracy of these  Plaintiffs RICO individuals is a violation of Title 18 U.S.C. § 1962 (d).

WHEREFORE, Defendant demands that judgment be issued against the Plaintiffs, ordering that:

A.  a finding that the agreements for the bailout funds have been and are continuing to be breached through fraud;

B.  a finding be made that said agreements are fraudulent as to content and intention;

C.  a finding be made that these bailout agreements are intentionally malicious and harmful to the consumer victims who are the American taxpayers, including the Defendant; and,

D. a finding be ordered that the Attorney General be notified of these alleged violations in order that proceedings may be instituted to investigate these allegations  to estop these actions from continuing against the consumer public pursuant to Title 18 U.S.C. § 1968.

F. such other and further relief as the Court deems proper.

## X.  CREDIT  REPORTING INFORMATION

78.  That Defendant incorporates and realleges paragraphs 1 through 77 as if fully set forth herein.

79.  That Defendant alleges that these credit reporting agencies are continually trafficking feloniously obtained information which holds the  consumers as prisoners by revealing this information without the consumer even knowing what has transpired. The manipulation of these credit reports by the Plaintiff Capital One Bank, N.A./National Attorney Network,  is a criminal activity, and as such is a contribution to the interstate fraud by these enterprises  in determining the "credit" and credibility of the Defendant. These  illegal punishments have been issued by the Plaintiff Capital One Bank, N.A.  against the Defendant and are reported to the various credit reporting agencies for use by the banking institutions which is a violation of  Title 18 U.S.C. § 1014.

80.   That Defendant alleges that the holding of these three controlling agencies that contain the citizen's credit history information and the enormous amount of search and seizure ability of these agencies of the persons, houses, papers and effects with which these criminal activities are performed is a violation of the Sherman Clayton Antitrust Act under Title 15 U.S.C. § 1, § 2, and § 8 since the right to the citizen's privacy is monopolized and destroyed by this single minded 'enterprise' in the violation of Amendment IV.

81.   That through the further violation of Amendment IV by the abuse of the Truth in Lending Regulations, these enterprises performed and perform extortionate demands on the consumer citizens through Title 18 U.S.C. § 1343, (wire fraud) and Title 18 U.S.C. § 1341, (mail fraud), and by false advertising to entice even more victims to buy engage in credit card scams through mail fraud and wire fraud.

82.   That Defendant alleges that mail fraud was instigated by the lack of utilization and execution of a law which demands its use to inform consumers of a change in credit conditions pursuant to Title 15 foll. U.S.C. §1700, 12 CFR § 226.9 (c)(1). Plaintiff Capital One Bank, N.A. failed to send in writing the notification in the prescribed time of the allegations against her prior to the filing of this lawsuit.

83.   That these racketeering predicate acts are related, and, they amount to or pose a threat of continued criminal activity. The predicate acts of advertising by mail and wire, (violations of Title 18 U.S.C. § 1341 and § 1343), which offer these new credit cards for sale in order to re-age old debts which are out of the Statute of Limitations still continues, and yet the company through its officers and employees still continues to ask its present customers for qualifying statements in order to change conditions after the contractual agreements are

instigated and to inflict restrictions upon the consumer which are in violation of the Truth in Lending Regulations under Title 15 foll. U.S.C. § 1700, 12 CFR § 226.17 (b).

WHEREFORE, Defendant demands that judgment be issued against the Plaintiff, ordering that:

A. a nullification and cancellation of any and all false claims and allegations against this Defendant based on Plaintiff Capital One Bank, N.A.'s fraudulent and criminal actions that are pending in this complaint;

B. the enterprises of Plaintiff Capital One Bank, N.A. be forced to comply with the federal laws pursuant to Title 15 foll. U.S.C. § 1700 as specifically outlined in this complaint and commonly known as the Truth in Lending Regulations;

C. the Court may direct any further actions and orders as it deems appropriate against the Plaintiff Capital One Bank, N.A. that are not known to the Defendant in the filing of this complaint pursuant to Title 28 U.S.C. § 1651 and § 1361; and,

D. such other and further relief as the Court deems proper.

## XI. PROTECTION OF DOCUMENTS

84. That Defendant incorporate and reallege paragraphs 1 through 83 as if fully set forth herein.

85. That upon information or belief, the Plaintiff Capital One Bank, N.A./ National Attorney Network in this action (have) in their possession "documentary material" as defined pursuant to Title 18 U.S.C. § 1961 (9) which includes documents, notes on conferences and meetings, and wire recordings that state or ascribe to the matters present in the Defendant's complaint.

86. That these said "documentary material" may contain declarations or statements that give credence to the Defendant's claims in this complaint. Some or all of the "documentary material" may be destroyed or disposed of in the normal scheduled procedures of Capital One Bank, N.A./ National Attorney Network's business, or otherwise be erased, destroyed, removed, or otherwise obliterated.

87. That if any of this "documentary material" is destroyed, misplaced or lost during this litigation, the Defendant would be deprived of material evidence in support of her claims; and the Defendant's ability to investigate and to prepare her case in subsequent Court events would be severely prejudiced and hampered.

88. That Defendant Jacobs is permitted and entitled pursuant to Fed. R. Civ. Pro. 26 (a) to pursue these avenues of inquiry and demand the production of this "documents material," and Defendant would be prejudiced if this statute law was violated by the Plaintiff Capital One Bank, N.A./ National Attorney Network.

89. That the Defendant has no adequate remedy at law to pursue these documentary material and other evidence except through this court.

90. That the Plaintiff Capital One Bank, N.A./ National Attorney Network will not be and cannot be prejudiced by the demand to preserve these documents, wire recordings, and other evidences.

WHEREFORE, Defendant prays for relief pursuant to the following:

A. demand that these documents aforementioned in their possession be maintained by the Plaintiff Capital One Bank, N.A./ National Attorney Network for the duration and pendency of this action.

B.  that the term "document material" be construed as it is defined by Title 18 U.S.C. § 1961 (9).

C.  that all "documentary material" be maintained and preserved in its proper containment in its original location at all times, and that said "documentary material" be available for inspection by Defendant  or her  representatives during regular business hours, by reasonable notice, at all times; and,

D.  that such other further relief be granted as the Court deems appropriate.

### XII.  DISCOVERY

91.  That Defendant incorporates and realleges paragraphs 1 through 90 as if fully set forth herein.

92.  That Defendant alleges that the information concerning continuing RICO activities which affect the financial institutions used for these transactions, and can only be revealed by the Plaintiff Capital One Bank, N.A./ National Attorney Network's enterprises through discovery pursuant to FRCvP Rule 26. These averments  do comply with FRCvP Rule 9 (b) pursuant to *Michaels Building Co. v. Ameritrust* Co., N.A. 848 F.2d 674 (6th Cir.1988), which avers that dismissal would mean that "corporate entities who jealously guard the names of their clients, as they should, would be forever victorious."

93.  That Defendant alleges that since she lacks access to these lists of consumer victims at the initial pleading stage, Rule 9(b) decisions permit the civil RICO claim to allege only the dates and amounts of the bailouts during this time frame. Greater accuracy can be obtained only after detailed discovery concerning the accounts.

94. That Defendant alleges that the telephone records on the dates stated prove that the predicate acts so detailed in this petition had to have used wire fraud to achieve the conspiratorial

goals of the persons involved in the racketeering activities. The telephone records for the calls made directly by the Plaintiff Capital One Bank, N.A./ National Attorney Network to the Defendant during this time period will justify the Defendant's claims.

95.   That Defendant alleges that details of the conspiracy at the high-level executive offices of Capital One Bank, N.A./ National Attorney Network in McLean, Virginia, are in the exclusive control of those officers since the inception of this lawsuit.

95.   That Defendant demands that pursuant to FRCvP Rule 26(a) (1) and (2), all advertising pertaining to the allegations of this complaint be submitted to this court by persons employed by the brokerages firms which represent Plaintiff Capital One Bank, N.A./ National Attorney Network, and/or any indirectly contracted advertising firm(s) who are alleged in this complaint to be 'associates in fact' of the alleged RICO enterprises. This advertising information is of a public nature and has already been conveyed to the public by the Plaintiffs and/or its advertising 'associates in fact' through television, newspapers, periodicals, brochures, and other such advertising information.

96.   That Defendant further alleges that Plaintiff Capital One Bank, N.A./ National Attorney Network's enterprises have purchased stock and other securities through the funds deposited with and in various financial institutions. Defendant demands that Capital One Bank, N.A./ National Attorney Network's enterprises reveal the source and amount of these stocks and securities in other companies and enterprises, especially those enterprises in indirect or direct competition or that support or work in conjunction with the Plaintiffs' enterprises.

97. That while the enterprise is internally dictating the approach to be made to other credit card   victims by using credit reporting services to obtain information about unsuspecting

consumers is in direct, *not indirect*, violation of Amendment IV of the Constitution of the United States.

WHEREFORE, Defendant pray:

A. that the Plaintiffs and  enterprises and  individuals so named in this complaint comply with the production of  all "documentary materials" aforementioned be produced as requested by these Defendant pursuant to Federal Rules of Civil Procedure Rule 26.;

B. that the information concerning the advertising and procurement for new bond issues be submitted for review pursuant to Federal Rules of Civil Procedure Rule 26.

C. that it is of primary concern to this court, and the  other bond holders of the Plaintiffs, that  in view of the  ongoing and continuous racketeering activities inside and outside of the enterprise so alleged in this complaint that the **total involvement of  Plaintiff Capital One Bank, N.A./ National Attorney Network  with the credit reporting agencies be revealed pursuant to the Federal Rules of Civil Procedure Rule 26.**

## XIII.  CONCLUSION

98.   That the Defendant in this case has the qualified right to bring this cause of action to this United States District Court for the protection of the Federal Statutes for Consumer Protection Act violations, Fair Debt Collection Practices Act Violations,   and, possibly, the interstate and foreign commerce violations pursuant to the RICO statutes.

VMS' state law claims unquestionably arise out of the same nucleus of operative facts as VMS' RICO claims. Judicial economy, the convenience of the parties and fairness dictate that the state law claims should be tried together with the RICO claims. [19]

99.   That Defendant avers that this not a frivolous or insignificant case. It affects hundreds and thousands of people who will observe what happens in this Court and determine

---

[19] *VMS/PCA Limited Partnership v. PCA Partners Limited Partnership*, 727 F.Supp. 1167, at 1174.

their own course of action. Therefore, this case demands a trial by jury to right these wrongs for

so many who will be affected by the outcome.

> . . . The federal system is an independent system for administering justice to litigants who
> properly invoke its jurisdiction. An essential characteristic of that system is the manner in
> which, in civil common-law actions, it distributes trial functions between judge and jury
> and, under the influence—if not the command—of the Seventh Amendment, assigns the
> decisions of disputed questions of fact to the jury. *Jacob v. New York*, 215 U.S. 91.[20]

### XIV.  PRAYER FOR RELIEF

WHEREFORE Defendant Nancy M. Jacobs respectfully requests that this court enter

judgment in her favor and against the Plaintiff Capital One Bank, N.A. as follows:

A.    That this Honorable Court grant this Notice of Removal pursuant to Title 28

U.S.C.A. § 1441 (Actions removable generally) and Title 28 U.S.C.A. § 1446 (Procedure for

removal), and  Order all records and papers be transferred from the District Court of Maryland

for Montgomery County, Case No. 2367-2011, to this Court to be combined with this cause of

action filed for direct  violations of Federal statutes in the interest of economy, justice, due

process of the law, and equal protection of the laws;

1.  That the Court  grant compensatory damages in an amount to be proven at trial but at

least $400,000.00 dollars plus all trial costs, and trebling such damages pursuant to Title 18

U.S.C. § 1964 (c);

2.  That on each of any other Counts not so enumerated, granting damages in an amount

to be determined at trial;

4 . That an award to the Defendant of reasonable fees for her time as 'private attorneys

general' for loss of revenue in  access of $50,000.00, and all costs for the preparation of this

complaint;

---

[20] *Byrd v. Blue Ridge Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953.

5. That a finding that Plaintiff Capital One Bank, N.A., its subsidiaries, the individual Plaintiffs, and others not so named in this complaint, estop them from raising any affirmative defenses to this action;

6. That the Defendant will obtain relief only if the sentencing and fines for the Plaintiffs GMAC and GM are significant, the restrictions for future business operations and procedures are ordered to conform to the laws of the United States, and only if the damages awarded to the Defendant are substantial enough to inhibit and deter the Plaintiffs Capital One Bank, N.A./ National Attorney Network from continuing in the criminal pattern of racketeering activities.

7. That the Court direct any further actions and orders against the Plaintiffs as it may deem appropriate, but not known to the Defendant as of filing of this complaint, pursuant to Title 28 U.S.C. § 1651 and § 1361;

8. **That the Defendant Nancy M. Jacobs is not an attorney and is not prepared to adequately defend this case without the aid and direction of not just an attorney but a law firm. The Defendant is in the process of finding this law firm to represent her in this case after this pleading is filed with this Honorable Court and the State court. Therefore, the Defendant prays for the indulgence of the Court to refrain from making any ruling upon this case until the Defendant can find proper legal counsel to represent her. This case started as a simple response to a State small claims court but upon Defendant's minor investigation abilities this case deserves the full support only a trained attorney can administer.**

9. Such other and further relief as the Court deems proper.

Defendant preserve the right to amend this complaint upon information and evidence to be obtained which will affect the outcome of this litigation upon approval of the Court after responsive pleadings have been filed.

### XV. TRIAL BY JURY

Defendant demand a trial by jury pursuant to Amendment VII of the Constitution of the United States and  Federal Rules of Civil Procedure Rule 38 (b). Right to trial by jury in a civil RICO case exists because the Supreme Court of the United States has long upheld this right pursuant to the antitrust laws and precedents which carry such a right.  *Fleitman v. Welsbach St. Lighting Co.,* 240 U.S.  27  (1916 ) (Holmes, J.).  The  right to trial by jury is derived from § 1964 (c).

Dated this 25th day of July, 2011.

Respectfully submitted,

Nancy Jacobs

12903 Summit Ridge Terrace
Germantown, Maryland 20874
Telephone: 202-416-1753
Cellular: (messages) 240-505-1604
E-Mail: sjnhjacobs@msn.com
Fax: 202-293-3083